ORIGINAL



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

DEC 1 6 2020

CLERK, U.S. DISTRICT COURT
By_____
      Deputy

UNITED STATES OF AMERICA

v.

SHERMAN ROBERTS

NO.

3-20CR0621-K

### INDICTMENT

The Grand Jury Charges:

#### Count One
Conspiracy to Commit Bribery Concerning Programs Receiving Federal Funds
[Violation of 18 U.S.C. § 371]

1.  **Sherman Roberts** was a real estate developer and the President and CEO of City Wide Community Development Corporation. He relied on and benefited from government programs including grants and loans to finance his projects.

2.  Council Member A, an individual known to the grand jury, was elected to the Dallas City Council in 2007, and re-elected to the same position in 2009, 2011, and 2013. During Council Member A's tenure on the City Council, Council Member A also served as a leader of the Dallas Housing Committee. Council Member A was an agent of the City of Dallas.

3.  Council Member B, an individual known to the grand jury, was a member of the Dallas City Council in 2018 and was an agent of the City of Dallas.

4. The City of Dallas was a local government that received benefits in excess of $10,000 in each of the fiscal one-year periods beginning on October 1, 2013 through October 1, 2018, under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of Federal assistance.

5. From in or around 2013 to in or around August 2018, in the Dallas Division of the Northern District of Texas and elsewhere, **Sherman Roberts**, City Council Member A, and others known and unknown to the grand jury did unlawfully, willfully, and knowingly combine, conspire, confederate, and agree with each other for Council Member A to receive bribes from **Roberts**, intending to be influenced and rewarded, and further conspired to bribe Council Member B, intending to influence Council Member B, in connection with a business, transaction, or series of transactions of the City of Dallas, involving anything of value of $5,000 or more, specifically, **Roberts's** real estate projects, in violation of 18 U.S.C. § 666(a)(2).

6. It was a part and object of the conspiracy that:

a. Council Member A corruptly solicited and demanded, and agreed to accept and did accept things of value from **Roberts** with the intent to be influenced and rewarded in the performance of Council Member A's official acts as a Dallas City Council Member and as a leader of the Dallas City Housing Committee that would advance the business interests of **Roberts's** real estate projects; and

b.  **Roberts** enriched himself by corruptly offering, giving, and agreeing to give things of value to Council Member A and Council Member B for the Council Members' performance of their official acts.

## Manner and Means of the Conspiracy

7.  In return for cash payments and the promise of future payments, Council Member A, in Council Member A's official capacity, lobbied and voted for **Roberts's** real estate projects, including projects known as Serenity Place Apartments, Runyon Springs, and Patriot's Crossing, located in Dallas, Texas, all of which the coconspirators concealed from the City Council, the Housing Committee, and the citizens of the City of Dallas.

8.  More specifically, in return for cash payments from **Roberts** and employment after Council Member A left the City Council in June 2015, Council Member A agreed to perform and performed a pattern of official acts to promote and advance **Roberts's** business interests, including:

a.  supporting and voting for **Roberts's** Serenity Place project in a leadership role on the City of Dallas Housing Committee, including recommending to the City Council that **Roberts's** project receive a conditional loan from the City of Dallas and other funds totaling $1,997,913;

b.  demanding that other applicants who were also seeking City of Dallas assistance and funding for their real estate projects withdraw their applications in order to increase **Roberts's** chances for the same; and

c. voting for **Roberts's** Serenity Place project as a City Council Member, including recommending that the project receive 9% low income housing tax credits from the Texas Department of Housing and Community Affairs (TDHCA) and authorizing the City of Dallas to provide funding in the amount of $1,997,913.

9. In return for a cash payment of $600, and the promise of future payments of $2,000 per month and a lump sum payment of $60,000, **Roberts,** acting in concert with Council Member A, also bribed Council Member B to receive favorable treatment from the City of Dallas in relation to a real estate project known as Patriot's Crossing.

10. More specifically, in return for such cash payments from **Roberts**, Council Member B agreed to perform or performed official acts for **Roberts**, including:

a. stopping a Request for Proposal from being issued by the City of Dallas concerning the Patriot's Crossing project; and

c. voting for and advocating for **Roberts's** project as a City Council Member with respect to Patriot's Crossing.

## Overt Acts

11. In furtherance of the conspiracy and to effect the objects thereof, one of the coconspirators committed, and caused to be committed, the following overt acts, among others, in the Dallas Division of the Northern District of Texas:

12. Sometime in or about February 2013, the exact date being unknown to the grand jury, **Roberts** and Council Member A agreed that Council Member A would promote **Roberts's** real estate projects before the City Housing Committee and the City

Council in exchange for things of value.

13. On or about February 27, 2013, the City Council along with Council Member A, voted to authorize the approval for **Roberts's** Serenity Place project to receive 9% low income housing tax credits from TDHCA. The City Council, along with Council Member A, also voted to award $1,997,913 in the form of a City of Dallas loan and other funds for the construction of Serenity Place pending award of the tax credits.

14. On or about May 20, 2013, after the City of Dallas received notification from the TDHCA that **Roberts's** application had been terminated, Council Member A lobbied for **Roberts's** TDHCA 9% low income housing tax credits Serenity Place project to be reinstated for consideration by the TDHCA by writing a letter in Council Member A's official capacity to the Executive Director of the TDHCA.

15. On or about May 22, 2013, Council Member A directed the placement of an addendum item to the Dallas City Council to amend the resolution approved on February 27, 2013 for **Roberts's** Serenity Place project in an effort to reinstate the project for consideration by the TDHCA. Council Member A also voted to authorize the amendment to extend the land lease agreement between the City of Dallas and **Roberts's** project.

16. In or about February 2014, Council Member A caused other developers known to the grand jury to withdraw their applications for 9% low income housing tax credits from City Council consideration thereby reducing the field of tax credits applicants competing against **Roberts**.

Indictment—Page 5 of 11

17. On or about February 18, 2014, during a meeting of the Housing Committee, Council Member A made a motion to designate **Roberts's** Serenity Place project as the key project for Dallas and voted to recommend **Roberts's** project to the City Council for approval.

18. On or about February 26, 2014, Council Member A voted during a City Council meeting to approve **Roberts's** Serenity Place project to receive the tax credits from TDHCA. Council Member A also voted to award, conditioned on award of the tax credits, a $1,000,000 loan for the construction of Serenity Place along with a $959,913 grant for its construction, and a $38,000 predevelopment grant for costs associated with the TDHCA application for Serenity Place (the grant was not conditioned on the 9% low income housing tax credits award). Council Member A knew that the vote would benefit **Roberts** financially and that **Roberts** needed the vote for his project.

19. On or about April 3, 2015, at approximately 11:18 a.m., **Roberts** told Council Member A "right now you and me are making money" in relation to **Roberts's** development projects, including **Roberts's** endeavors to develop a project known as Patriots Crossing.

20. On or about April 7, 2015, at approximately 9:37 p.m., **Roberts** told Council Member A that he believed a city official was trying to push him aside in favor of another developer to develop the Patriots Crossing project.

21. On or about April 20, 2015, during a meeting of the Housing Committee, Council Member A voted to recommend to the City Council a forgivable City of Dallas

housing development loan for **Roberts's** project known as Runyon Springs in an amount not to exceed $300,000. Council Member A knew the vote would benefit **Roberts** financially and knew that **Roberts** needed the vote for his project.

22. On or about April 28, 2015, at approximately 9:08 a.m., Council Member A asked **Roberts** for money, in particular: "… just a few dollars." **Roberts** agreed, referenced incoming funds, and stated, "I'll share that with you when I get that."

23. On or about May 18, 2015, at approximately 4:28 p.m., **Roberts** told Council Member A: "I'm bidding on it [Patriots Crossing]." Council Member A replied "I am your mouthpiece." Council Member A further told **Roberts** "I want to get a copy of the RFP [Request for Proposal]…. I got to figure out what we need to add in it, Sherman." **Roberts** replied, "Okay." Council Member A assured **Roberts** with this response: "to make sure what's added in it so you can get the bid" and "I put it on the next agenda."

24. On or about May 31, 2015, at approximately 11:22 a.m., Council Member A requested money from **Roberts**, stating, "I can just get with you Monday. I want you to give me a few dollars…" **Roberts** responded "Okay."

25. On or about June 3, 2015, Council Member A caused a closed session briefing to occur wherein the Dallas City Council considered delaying a RFP for the Patriots Crossing project.

26. From on or about September 2014 through in or about January 2016, **Roberts** received draws from the City of Dallas for his Serenity Place project totaling

approximately $1,617,051.86, including draws totaling $195,990.87 on or about January 5, 2016, pursuant to invoices **Roberts** had submitted to the City of Dallas.

27. On or about August 7, 2018, during a meeting with the then-former Council Member A and Council Member B, **Roberts** sought to corruptly influence Council Member B regarding **Roberts's** Patriots Crossing project. Council Member B advised Council Member A and **Roberts** that the City of Dallas was drafting a RFP for Patriots Crossing. Council Member A, on behalf of **Roberts**, replied: "You can stop that..." and further told Council Member B "you going to have to tell them look I don't want an RFP in my district...you can stop an RFP." Council Member A added "the difference is I had control of Housing." At another point in the conversation, Council Member A said: "When I was the chair ... say I was the chair now – I would force Housing to let that property go into his development – and he would start the project."

28. During the same meeting on August 7, 2018, **Roberts** discussed meeting with other Dallas City Council Members to get to eight votes regarding his Patriots Crossing project. Council Member A replied: "We got to get to eight and once we get to eight can you [Council Member B] get it pushed out of the City Council ... you going to have to help with number 8, too." Council Member B asked **Roberts**: "How much is the project worth ... when it's said and done, how much goes in Sherman's bank account?" **Roberts** responded: "850 thousand off the residential." Council Member A replied "over a period of years...this ain't like no next year." Council Member B said: "Once you're successful with this project don't forget about me and [Council Member A]."

Indictment—Page 8 of 11

**Roberts** responded: "I won't forget about you. That's where the money is." **Roberts** further responded: "I know what he's saying—I always say—the money has never been an issue, how much and all that, it's getting to the project because that's where the money starts." Council Member A added "it's a long term process—when you talking about this type of project in a developer fee it might be 2, 3 years before you get some money."

29. On or about August 8, 2018, Council Member B met with **Roberts** to discuss the Patriots Crossing project. At the beginning of the meeting, **Roberts** paid Council Member B $600 in cash in exchange for stopping the RFP. Council Member B said to Roberts: "yesterday you said you needed me to stop the RFP." **Roberts** replied "… If there is an RFP coming out, I need you to stop it … yes, I do." In the same meeting, Council Member A asked **Roberts** "How much is the project worth?" **Roberts** replied "About 45 million." At one point in the conversation, **Roberts** asked Council Member B: "You think you can deliver this?" Council Member B replied: "… is this what you're asking me to do is to deliver it?" **Roberts** responded: "Yeah, I want you to deliver the project." Council Member B replied: "…that's what I'm agreeing to…" In return, **Roberts** agreed to pay Council Member B a $2,000 monthly stipend until **Roberts** refinanced another project, and then at that point, **Roberts** agreed to pay Council Member B $60,000 of the proceeds from the refinancing of another project.

All in violation of 18 U.S.C. § 371 (18 U.S.C. § 666(a)(2)).

## Count Two
### Bribery Concerning a Local Government Receiving Federal Benefits
[Violation of 18 U.S.C. § 666(a)(2)]

30. The Grand Jury hereby adopts, re-alleges and incorporates herein all allegations set forth in the preceding paragraphs of this indictment as if fully set forth herein.

31. On or about August 7, 2018, in the Dallas Division of the Northern District of Texas, the defendant, **Sherman Roberts**, corruptly offered to give and did give something of value to Council Member B in connection with a business, transaction, and series of transactions of the City of Dallas involving anything of value of $5,000 or more, to wit: votes and other official acts by Council Member B regarding **Roberts's** project, with the intent to influence and reward Council Member B, an agent of the City of Dallas, a local government that received benefits in excess of $10,000 in the one-year period beginning October 1, 2017 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of Federal assistance.

In violation of 18 U.S.C. § 666(a)(2).

A TRUE BILL

_____
FOREPERSON

ERIN NEALY COX
UNITED STATES ATTORNEY

_____
MARCUS BUSCH
Assistant United States Attorney
Texas Bar No. 03493300
ANDREW O. WIRMANI
Assistant United States Attorney
Texas Bar No. 24052287
1100 Commerce Street, Third Floor
Dallas, Texas 75242
Telephone: 214-659-8642
Facsimile: 214-659-8809
marcus.busch@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

---

THE UNITED STATES OF AMERICA

v.

SHERMAN ROBERTS

---

INDICTMENT

18 U.S.C. § 371
Conspiracy to Commit Bribery Concerning Programs Receiving Federal Funds
(Count 1)

18 U.S.C. ' 666(a)(2)
Bribery Concerning a Local Government Receiving Federal Benefits
(Count 2)

2 Counts

---

A true bill rendered

_____
FORT WORTH                                                                              FOREPERSON

Filed in open court this 16th day of December, 2020.

---

**Warrant to be Issued**

---

_____
UNITED STATES MAGISTRATE JUDGE
No Criminal Matter Pending