



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

UNITED STATES OF AMERICA

v.                                                              NO. 3:20-CR-00621-K

SHERMAN ROBERTS

## FACTUAL RESUME

In support of Sherman Roberts's plea of guilty to the offense in Count One of the

indictment, Roberts, the defendant, William Cox, the defendant's attorney, and the

United States of America (the government) stipulate and agree to the following:

## ELEMENTS OF THE OFFENSE

To prove the offense alleged in Count One of the indictment charging a violation

of 18 U.S.C. § 371, that is, conspiracy to commit bribery concerning an agent of a local

government receiving federal benefits in violation of 18 U.S.C. § 666(a)(1)(B), the

government must prove each of the following elements beyond a reasonable doubt:[1]

> *First*:    That the defendant and at least one other person made an agreement
> to commit the crime of bribery concerning an agent of a local
> government receiving federal benefits in violation of 18 U.S.C. §
> 666(a)(1)(B), as charged in the indictment;

> *Second*:    That the defendant knew the unlawful purpose of the agreement and
> joined in it willfully, that is, with the intent to further the unlawful
> purpose; and

> *Third*:    That at least one of the conspirators during the existence of the

---

[1] Fifth Circuit Pattern Jury Instruction 2.15A (5th Cir. 2019).

Factual Resume—Page 1

conspiracy knowingly committed at least one of the overt acts described in the indictment, in order to accomplish some object or purpose of the conspiracy.

The essential elements of bribery concerning programs receiving federal benefits in violation of 18 U.S.C. § 666(a)(1)(B), in the context of a conspiracy in violation of 18 U.S.C. § 371, are:[2]

*First*: That Council Member A or Council Member B was an agent of the City of Dallas;

*Second*: That the City of Dallas was a local government that received in any one-year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of Federal assistance;

*Third*: That the defendant corruptly gave, offered, or agreed to give anything of value to any person, with intent to influence or reward Council Member A or Council Member B of the City of Dallas, in connection with any business, transaction, or series of transactions of the City of Dallas; and

*Fourth*: That the business, transaction, and series of transactions involved anything of value of $5,000 or more.

## STIPULATED FACTS

1. The defendant agrees that the following facts are true and correct and that his testimony at any trial would reflect the same.

---

[2] Fifth Circuit Pattern Jury Instruction 2.33B (5th Cir. 2019).

2.      From in or around 2013 to in or around August 2018, in the Dallas Division of the Northern District of Texas and elsewhere, the defendant, Sherman Roberts, and a former Dallas City Council Member ("Council Member A"), unlawfully, willfully, and knowingly did combine, conspire, confederate and agree together and with each other for Council Member A to receive money and other benefits from Roberts intending to be influenced and rewarded in connection with transactions before the City of Dallas, specifically, Roberts' real estate projects, in violation of Title 18, U.S.C. § 666(a)(1)(B).

3.      Council Member A, while a City of Dallas Council Member and the Chair of the Housing Committee, received money and other benefits from Roberts, a real estate developer and the President and CEO of City Wide Community Development Corporation, in exchange for favorable official action, or the promise of favorable official action, related to Roberts' projects, specifically, Serenity Place Apartments, Runyon Springs, and Patriot's Crossing, all within the City of Dallas.

4.      Roberts and Council Member A, at all relevant times, knew the unlawful purpose of the agreement and joined in it willfully, that is, with the intent to further the unlawful purpose.

5.      At the direction of Council Member A, and in order to disguise the bribe payments, Roberts paid Council Member A directly in cash, not more than $4,000 while Council Member A was on the City Council and not more than $1,000 after Council Member A left the City Council, for Council Member A's official actions in support of Roberts' projects.

6.      The money that Council Member A received from Roberts was due to

Council Member A's position on the City Council and as the Chair of the Housing Committee, and Council Member A knew that the money was to secure Council Member A's political influence so Council Member A would further Roberts' real estate projects.

7.     In exchange for benefits, Council Member A, in an official capacity, lobbied and voted for Roberts' projects, including the authorization of City of Dallas funds and obligations, all of which the coconspirators concealed from the City Council, the Housing Committee, and the citizens of the City of Dallas.

8.     On or about February 4, 2013, during a meeting of the Housing Committee, Council Member A, as the Chair of the meeting, voted to recommend to the Dallas City Council its approval to the Texas Department of Housing and Community Affairs (TDHCA) for 9% low income housing tax credits (LIHTC) for Roberts' project known as Serenity Place Apartments.

9.     On or about February 27, 2013, the City Council along with Council Member A voted to authorize the approval for Roberts' Serenity Place project to receive 9% LIHTC from TDHCA.  Also, the City Council along with Council Member A voted to award a $1,997,913 City of Dallas loan for the construction of Serenity Place pending award of the tax credits.  Council Member A knew the vote would benefit Roberts financially and knew that Roberts needed the vote for his project.

10.     On or about May 20, 2013, Council Member A lobbied for Roberts' TDHCA 9% LIHTC Serenity Place project to be reinstated for consideration by the TDHCA, after the City of Dallas received notification from the TDHCA that Roberts' application had been terminated, by writing a letter in Council Member A's official

capacity to the Executive Director of the TDHCA.

11.     On or about May 22, 2013, Council Member A directed the placement of an addendum item to the Dallas City Council to amend the resolution approved on February 27, 2013 for Roberts' TDHCA 9% LIHTC Serenity Place project in an effort to reinstate the project for consideration by the TDHCA. Council Member A along with the City Council voted to authorize the amendment to extend the land lease agreement between the City of Dallas and Roberts' proposed TDHCA 9% LIHTC Serenity Place Apartments project.

12.     In or about February 2014, Council Member A caused other developers known to the United States to withdraw their applications for 9% LIHTC from City Council consideration thereby reducing the field of LIHTC applicants competing against Roberts' Serenity Place project.

13.     On February 18, 2014, during a meeting of the Housing Committee, Council Member A, as the Chair of the meeting, made a motion to designate Roberts' TDHCA 9% LIHTC Serenity Place project as the key project for Dallas and voted to recommend Roberts' TDHCA 9% LIHTC Serenity Place project to the City Council for approval. In return, Roberts promised Council Member A future payments once he earned his developer's fee for the project, if the project was approved for LIHTC by the TDHCA and after he developed and sold or refinanced the project.

14.     On February 26, 2014, Council Member A voted during a City Council meeting to provide approval for Roberts' Serenity Place project to receive the tax credits from TDHCA. Also, Council Member A and the City Council voted to award, pending

award of the tax credits, a $1,000,000 loan for the construction of Serenity Place along with a $959,913 grant for its construction, and a $38,000 predevelopment grant for costs associated with the TDHCA application for Serenity Place (the grant was not conditioned on the 9% LIHTC award). Council Member A knew that the vote would benefit Roberts financially and that Roberts needed the vote for his project.

15.     On or about April 3, 2015, at approximately 11:18 a.m., Roberts told Council Member A "right now you and me are making money" in relation to Roberts development projects, including Roberts endeavors to develop a project known as Patriots Crossing.

16.     On or about April 7, 2015, at approximately 9:37 p.m., during a conversation with Council Member A, Roberts told Council Member A that he believed a city official was trying to push him aside in favor of another developer to develop the Patriots Crossing project.

17.     On April 20, 2015, during a meeting of the Housing Committee, Council Member A, as the Chair of the meeting, voted to recommend to the City Council the authorization of a forgivable City of Dallas housing development loan for Roberts' project known as Runyon Springs in an amount not to exceed $300,000. Council Member A knew the vote would benefit Roberts financially and knew that Roberts needed the vote for his project.

18.     On or about April 28, 2015, at approximately 9:08 a.m., Council Member A asked Roberts for money which Roberts agreed to provide. Specifically, Roberts told Council Member A in response to her request: "I got ages set back on something. I'll

Factual Resume—Page 6

share that with you when I get that."

19.    On or about May 18, 2015, at approximately 4:28 p.m., Roberts told Council Member A: "I'm bidding on it [Patriots Crossing]."  Council Member A replied "I am your mouthpiece." Council Member A further told Roberts "I want to get a copy of the RFP [Request for Proposal]…I got to figure out what we need to add in it, Sherman." Roberts replied, "Okay."  Council Member A assured Roberts with this response: "to make sure what's added in it so you can get the bid" and "I put it on the next agenda."

20.    On or about May 31, 2015, at approximately 11:22 a.m., Council Member A requested money from Roberts, specifically, "I can just get with you Monday.  I want you to give me a few dollars…"  Robert's responded "Okay."

21.    On or about June 3, 2015, Council Member A caused a closed session briefing to occur wherein the Dallas City Council considered the delay for releasing an RFP for the Patriots Crossing project.

22.    On or about August 7, 2018, during a meeting with the by now former Council Member A, Roberts sought to corruptly influence another City of Dallas Council Member ("Council Member B") regarding Roberts' Patriots Crossing project.  Council Member B advised Council Member A and Roberts that the City of Dallas was drafting a RFP for Patriots Crossing.  Council Member A, on behalf of Roberts, replied: "You can stop that..." and further told Council Member B "you going to have to tell them look I don't want an RFP in my district…you can stop an RFP."  Council Member A added "the difference is I had control of Housing."  At another point in the conversation, Council Member A said: "When I was the chair…say I was the chair now – I would force

Housing to let that property go into his development – and he would start the project."

23.     During the same meeting on August 7, 2018, Roberts discussed meeting with other Dallas City Council Members to get to eight votes regarding his Patriots Crossing Project. Council Member A replied: "We got to get to eight and once we get to eight can you [Council Member B] get it pushed out of the City Council...you going to have to help with number 8, too." Council Member B asked Roberts: "How much is the project worth...when it's said and done, how much goes in Sherman's bank account?" Roberts responded: "850 thousand off the residential." Council Member A replied "over a period of years...this ain't like no next year." Council Member B said: "Once you're successful with this project don't forget about me and [Council Member A]." Roberts responded: "I won't forget about you. That's where the money is." Roberts further responded: "I know what he's saying -- I always say--the money has never been an issue, how much and all that, it's getting to the project because that's where the money starts." Council Member A added "it's a long term process – when you talking about this type of project in a developer fee it might be 2, 3 years before you get some money."

24.     On or about August 8, 2018, Council Member B met with Roberts to discuss the Patriots Crossing Project. At the beginning of the meeting, Roberts paid Council Member B $600 in cash in exchange for stopping the RFP. Council Member B said to Roberts: "yesterday you said you needed me to stop the RFP." Roberts replied "...If there is an RFP coming out, I need you to stop it...yes, I do." In the same meeting, Council Member A asked Roberts "How much is the project worth?" Roberts replied "About 45 million." At one point in the conversation, Roberts asked Council Member B

"You think you can deliver this?" Council Member B replied: "…is this what you're asking me to do is to deliver it?" Roberts responded: "Yeah, I want you to deliver the project." Council Member B replied: "…that's what I'm agreeing to…." In return, Roberts agreed to pay Council Member B $2,000 until Roberts refinanced another project, and then at that point, Roberts agreed to pay Council Member B from the proceeds from the refinancing of that project.

25.     Roberts agrees and stipulates that the City of Dallas was a local government that received benefits in excess of $10,000 in each of the consecutive fiscal one-year periods beginning October 1, 2013, October 1, 2014, and October 1, 2017, under a federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of federal assistance.

26.     Roberts further agrees and stipulates that Roberts' projects and Council Member A and Council member B's support, promotion, and votes for his projects, constituted a business, a transaction, or series of transactions of the City of Dallas that involved a value of $5,000 or more.

27.     Roberts agrees that he committed all the essential elements of the offense. This factual resume is not intended to be a complete accounting of all the facts and events related to the offense charged in this case. The limited purpose of this statement of facts is to demonstrate that a factual basis exists to support the defendant's guilty plea to Count One of the indictment.

AGREED TO AND STIPULATED on this 25th day of SEPTEMBER , 2024.

Factual Resume—Page 9

LEIGHA SIMONTON
UNITED STATES ATTORNEY

SHERMAN ROBERTS
Defendant

MARCUS BUSCH
Assistant United States Attorney
Texas Bar No. 03493300
DONNA MAX
Assistant United States Attorney
Texas Bar No. 24041984
1100 Commerce Street, Suite 300
Dallas, Texas 75242-1699
Tel: (214) 659-8600
Fax: (214) 659-8809
Email: marcus.busch@usdoj.gov
Email: donna.max@usdoj.gov

WILLIAM COX
Attorney for Defendant