**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **NO.  3:20-CR-00621-K-1** |
| | § | |
| **SHERMAN ROBERTS (1)** | § | |

## MOTION TO WITHDRAW PLEA OF GUILTY PRIOR TO SENTENCING

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

COMES NOW the defendant, SHERMAN ROBERTS,  by and through undersigned counsel, and respectfully moves this Honorable Court to allow withdrawal of the guilty plea entered on September 26, 2024, pursuant to Federal Rules of Criminal Procedure 11(d)(2)(B), before sentencing, and in support thereof states as follows:

## I.
## BACKGROUND

On December 16, 2020, Sherman Roberts was indicted on two counts of Bribery. Count One charged him with Conspiracy to Commit Bribery Concerning Programs Receiving Federal Funds. Count Two charged him with Bribery Concerning a Local Government Receiving Federal Benefit (Dkt. 1).

Douglas C. Greene, Sr., entered his appearance  as retained counsel on December 18, 2020. (Dkt. 7). However, Mr. Greene subsequently passed away and it was duly noted by the Court on September 14, 2021 (Dkt. 17). Thereafter,  on September 20, 2021, William Cox, III entered his appearance as new counsel for Mr. Roberts. (Dkt. 18).

Over the course of the next three (3) years this case was agreed to be continued by the government and Mr. Roberts through a series of "Agreed Motions to Continue Trial." See Dkt. 20, 23, 25 and 27. On April 22, 2024, and Mr. Roberts agreed to waive his rights to a trial by jury with consent of the government. Thereafter, a bench trial was set for October 28, 2024 (Dkts. 29 and 32).

On September 26, 2024, a Plea Agreement executed by the parties was filed with the Court, as well as a Factual Resume (Dkts. 33 and 34). As a result, his re-arraignment was eventually held before U.S. Magistrate Judge Rebecca Rutherford on November 12, 2024, wherein Mr. Roberts pled guilty to Count One of the Indictment. The Court accepted Mr. Roberts' plea on November 27, 2024 (Dkt. 41).

## II.
## LEGAL STANDARD

At the heart of the American system of criminal justice lies the Sixth Amendment's guarantee that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime has been committed." See U.S. CONST. art. VI, § 1. However, a vast majority of cases plead out under the framework provided by Federal Rule 11. See FED. R. CRIM. P. 11(a)–(h); see generally U.S. v. Gonzalez, 309 F.3d 882, 885–888 (5th Cir. 2002) (explicating the rules governing plea and proffer agreements in federal court)[1]. Once a plea is made, the Court can "accept the agreement, reject it, or defer a decision until the court has reviewed the presentence report." FED. R. CRIM. P.

---

[1] In 2022, for instance, only 2.3% of federal criminal cases (1,669 of 71,952 defendants) went to trial. See J. Gramlich, Fewer than 1% of federal criminal defendants were acquitted in 2022, PEW RESEARCH (June 14, 2023), https://www.pewresearch.org/short-reads/2023/06/14/fewer-than-1-ofdefendants-in-federal-criminal-cases-were-acquitted-in-2022.

11(c)(1).

Defendants do not enjoy an absolute right to withdraw a guilty plea. *U.S. v. Harrison*, 777 F.3d 227, 234 (5th Cir. 2015); see *U.S. v. Lampazianie*, 251 F.3d 519, 523–24 (5th Cir. 2001) ("We note at the outset that there is no absolute right for a defendant to withdraw a plea."); see also FED. R. CRIM. P. 32(e) (noting acceptance of a withdrawal is within the Court's discretion). Rather, "a defendant may withdraw a guilty plea if he or she 'can show a fair and just reason for requesting the withdrawal.'" *United States v. Armendariz*, 80 F.4th 546, 550 (5th Cir. 2023) (quoting FED. R. CRIM. P. 11(d)(2)(B)). To determine if there's a "fair and just reason" for withdrawal, the Court analyzes seven factors originally enumerated in *United States v. Carr*, 740 F.2d 339, 343–44 (5th Cir. 1984). These include:

> (1) whether the defendant asserted his actual innocence; (2) whether withdrawal would prejudice the Government; (3) the extent of the delay, if any, in filing the motion to withdraw; (4) whether withdrawal would substantially inconvenience the court; (5) whether the defendant had the benefit of close assistance of counsel; (6) whether the guilty plea was knowing and voluntary; and (7) the extent to which withdrawal would waste judicial resources. *Id.*

Importantly, "no single factor or combination of factors mandates a particular result, and "the district court should make its determination based on the totality of the circumstances." *United States v. Still*, 102 F.3d 118, 124 (5th Cir. 1996). Further, the Court is "not required to make findings as to each of the Carr factors. *United States v. Powell*, 354 F.3d 363, 370 (5th Cir. 2003). "[T]he burden of establishing a fair and just reason for requesting withdrawal under Carr 'rests with the defendant.'" Harrison, 777 F.3d at 234 (quoting *United States v. Brewster*, 137 F.3d 853, 858 (5th Cir. 1998)).

### III.

### ANALYSIS

1) *Assertion of Innocence*

Mr. Roberts is currently 71 years of age being the third of 13 children born to his mother,. He has a pristine records with  absolutely zero criminal history and a track record  of gainful employment. However, Mr. Roberts does suffer from a number of physical ailments  ranging from  severe prostate issues  with loss of bladder control, irritable bowel syndrome ("IBS"), hypertension, gastroesophageal reflux diseases and gall bladder dysfunction.   In fact, Mr. Roberts has impending surgery to remove his gall bladder. He is also pre-diabetic.

During the course of this prolonged post indictment period, Mr. Roberts has repeatedly told his attorney, William Cox III, that he is not guilty of these charges. *See Declaration of Sherman Roberts attached hereto as Exhibit "A. "* He consistently maintained his innocence in communications with his initial counsel, Douglas C.  Greene. As outlined in his attached declration, Mr. Roberts relates that Mr. Greene made concerted efforts to follow up to corroborate Mr. Roberts's statement declaring innocence—actions taken that Mr.  Cox did not duplicate.  Ongoing trial delays, combined with his and his wife's health issues and mounting stress, led Mr. Roberts to give in to Cox's pressure to plead guilty. Cox further enticed Mr. Roberts by claiming that he would likely receive probation as a result of his cooperation with the government in their pending cases against Ruel Hamilton[2]. These assurances, along with his

---

[2] *US v. Ruel Hamilton,* No. 23-11132 (5th Cir. 2024). Mr. Hamilton was acquitted June 13, 2025

mindset, led Mr. Roberts to adhere to the path and instructions provided by Mr. Cox. Feeling overwhelmed and scared, yet maintaining a modicum of remaining trust with Mr. Cox,  Mr. Roberts ,to his detriment, decided to plead guilty. However, he continues to state that he is innocent. An assertion of innocence alone, however, does not warrant withdrawal of a guilty plea. *United States v Clark,* 931 F.2d 292, 295 (5th Cir. 1991).  The plea hearing reflects the acknowledgment on Mr. Roberts part of his guilt after the Magistrate Judge thoroughly discussed the facts to which he pled and the consequences of a guilty plea. In addition, counsel is aware that Mr. Roberts declaration in open court that his plea is not the product of threats or coercion carries a strong presumption of veracity. *Id.* (quoting *United States v Darling,* 766 F.2d 1095 (7th Cir.), *cert. denied,* 474 U.S. 1024 (1985).  However, Mr. Roberts' affidavit, supported by the exhibits attached thereto, provides specific supported allegations that, coupled with his mental and physical state at the time, reveal substantial  reasons in support of his innocence. Together with his affidavit there exists the Presentence Report  ("PSR")  which acknowledges that Mr. Roberts statements submitted attempt "to minimize his own conduct and intention." This was true as it reflects his belief in his innocence

2) *Prejudice to the Government*

A preliminary examination of the discovery in this case indicates that granting this motion would not result in any prejudice to the government.  It appears that the key witnesses and evidence are still available. The government will rely on recordings made pursuant to *Title III* and said recordings are surely intact and safely stored as the law requires. While trial preparation may inconvenience the government, case agents are able to efficiently locate and provide witnesses and evidence.

3) *Delay in Filing the Motion*

Admittedly, this is the weakest argument advanced by undersigned counsel on behalf of Mr. Roberts. It has been almost a year since his plea. It has become evident in recent months since Mr. Roberts entered his plea that Cox has wholly failed in his representation of Mr. Roberts. However, Mr. Roberts was consistently led to believe that Cox was a zealous advocate for him when, as he has recently discovered, quite the opposite is true. In addition, Mr. Cox's officemate, Kevin Willy, who also serves as Mr. Roberts' civil counsel, helped to perpetuate Cox's commission of ineffective assistance of counsel by constantly telling Mr. Roberts that Cox was acting in his best interests. However, the facts outlined below demonstrate Cox's blatant ineffectiveness.

4) *Inconvenience to the Court*

The withdrawal of this plea will not inconvenience the Court. It is quite evident that undersigned counsel requires adequate time to prepare for trial. Counsel anticipates that the Court will allocate an appropriate period that aligns with the court's future trial schedule.

5) *Close Assistance of Counsel*

This guilty plea is infected with ineffective assistance of counsel which constitutes a violation of the Sixth Amendment. However, the "close assistance of counsel" factor is not identical to the familiar Ineffective Assistance of Counsel ("IAC") standard. While the analysis is the same, "close assistance of counsel under [Rule 11] and constitutionally ineffective assistance of counsel under the Sixth Amendment are distinct issues." *United States v. McKnight*, 570 F. 3d 641 (5th Cir. 2009)(collection cases). How do they differ? By their *application* . Close assistance of counsel guides a court's discretion in allowing or disallowing the withdrawal of a

guilty plea, while IAC is used to invalidate a conviction or sentence that's unconstitutional .

Arguing IAC, then, implicates the validity of this guilty plea and is an independent ground for

withdrawal. Pressing a lack of "close assistance of counsel" supports only withdrawing the guilty

plea and is but one factor of many the court considers.

As outlined in his affidavit, Mr. Robets raises numerous issues with Mr. Cox's

representation. First, Mr. Roberts states that his attorney failed to review discovery with him, and

did not fully explain the factual basis of his guilty plea and implications. Mr. Cox also failed to

interview witnesses who could provide exculpatory evidence for Mr. Roberts, despite  Mr.

Roberts insistence that he do so. Mr. Cox also failed to seek and obtain prior counsel's (Douglas

Greene) files and notes. This basic rudimentary step for an attorney who substitutes for previous

counsel is an obligation of counsel in order to obtain the benefit of previous counsel's work

product.  This also serves to bring counsel "up to speed" on the various complexities surrounding

the case.

Mr. Roberts also further explains that Mr. Cox consistently told him of the existence of a

USSG 5K1.1 provision that if he substantially assisted the Government in its ongoing case

against Ruel Hamilton, they would recommend probation. Glaringly obvious is the fact that no

5K1.1 provision is contained in his plea agreement. Mr. Cox attempted to rationalize its

nonexistence in the plea agreement by explaining to Mr. Roberts that such provisions are not

typically inserted in a written plea agreement. This bold, inaccurate and misleading statement

aided in prompting Mr. Roberts to execute the plea documents. In addition, counsel wholly failed

to explore a Rule 11(C)1(c) agreement for the court to impose a specific sentence such as

probation.

What is also evident from communications between Mr. Cox and his staff to Mr. Roberts is the total lack of attention to the need to file objections to the Presentence Report ("PSR"). Said objection were due last week (August 20, 2025). Emails between Mr. Cox and his staff and Mr. Roberts dated August 20, 2025—the deadline date for objections reveal that Mr. Cox only provided the PSR to Mr. Roberts on the due date for same. Mr. Cox then requested that he (Mr. Roberts) provide the objections-a role counsel is required to undertake.  This dereliction of duty on the part of counsel shocks the conscience as counsel is obligated to review the PSR to determine not only factual errors in the PSR but to also make legal objections related to enhancement issues such as aggravating factors and the applicable guideline level. At the present time, Cox has not submitted any objections to the PSR.  Indeed, in a call with Mr. Roberts the evening of August 26th, Cox once again suggested that Mr. Robert provide the objections and that he would find a way to get them submitted though it is way past the deadline to do so. Mr. Roberts has an array of objections that should and must be made despite Mr. Cox's abject failure in this regard. This point is made even more clear by the declarations of Charles Gulley, a retired City of Dallas Housing Department employee and Certified Public Accountant, Neal Walker. Together and separately, each witness makes it clear that even if guilty – which Mr. Roberts denies – any benefit he received was substantially less than the more than $3,700,000 the government assigns to him. *See attached hereto as Exhibit "B" and Exhibit "C".* Had he been effective and diligent, Mr. Cox would have spoken to these witnesses.

This evidence clearly demonstrates Mr. Cox's lack of understanding of the complexities of this case, his lack of interest in attempting to investigate the facts, and his failure to understand and comprehend potential strategies or the possibility of going to trial.

6) *Knowing and Voluntary Plea*

The sixth *Carr* factor asks whether a defendant's plea was knowing and voluntary. 740 F.2d at 434. The north star of any plea arrangement, a plea is considered "knowing and voluntary" where "the defendant . . . is advised of and understand[s] the consequences of the plea." *United States v. Gaitan*, 954 F.2d 1005, 1011 (5th Cir. 1992). This consists of an objective element (*i.e.*, whether a defendant's lawyer advised them of relevant consequences) and a subjective element (*i.e.*, whether the defendant understood the consequences). The odds are stacked against defendants in Mr. Roberts's shoes, as "[a] defendant's 'statement that his plea was knowing and voluntary and that he understood the rights he was waiving create a presumption that in fact the plea is valid.'" *United States v. Landreneau*, 967 F.3d 443, 450 (5th Cir. 2020) (citing *United States v. Washington*, 480 F.3d 309, 316 (5th Cir. 2007)). As outlined above, Mr. Roberts has valid justifications for a finding that he was at least partially precluded from appreciating the consequences of his plea under the circumstances of this case.

Criminal defendants deserve to know the relevant facts when pleading guilty. While the Government doesn't have to play all its cards, the defendant should at least know what cards are on the table. Among other things, this calls for sufficient advice from a defendant's counsel under the circumstances of a given case. "In the context of a guilty plea, counsel's performance is deficient when his advice leaves the defendant unable to make an informed and conscious choice to plead guilty." *United States v. Cavitt*, 550 F.3d 430, 431 (5th Cir 2008). The facts and circumstances that exist in this case reflect clearly deficient and inadequate assistance of counsel that undermines Mr. Roberts knowing and voluntary plea in this case.

7) *Waste of Judicial Resources*

There would be no waste of judicial resources by allowing this plea to be withdrawn. Indeed, judicial resources would be saved by so doing as it would result in no 2255 writ being advanced setting forth the ineffective assistance of counsel that blatantly exists in this case.


WHEREFORE, the defendant respectfully requests that this court grant the motion and allow withdrawal of the guilty plea entered on September 26, 2024, and permit Defendant to enter a plea of not guilty.


Respectfully submitted,


/s/Michael P. Heiskell
Michael P.  Heiskell
State Bar No.  09383700
**JOHNSON, VAUGHN, & HEISKELL**
500 W. 7th Street, Suite 700
Fort Worth, Texas 76102
(817) 457-2999
(817) 496-1102 facsimile
E-mail: mheiskell@johnson-vaughn-heiskell.com or
firm@johnson-vaughn-heiskell.com


/s/ Nate Washington
Nate Washinton
Texas Bar No. 24042126
The Washington Firm
1000 Macon Street, Suite 300
Fort Worth, Texas 76102
Telephone: 817-339-1406
 Facsimile: 817-339-1407
Email: njw@theWfirm.com

**ATTORNEYS FOR THE DEFENDANT**

**CERTIFICATE OF CONFERENCE**

This is to certify that I contacted AUSA, Chad Meacham, on this the 29th day of August 2025, regarding the foregoing and he is opposed to the filing of this motion.

/s/Michael P. Heiskell
Michael P. Heiskell

**CERTIFICATE OF SERVICE**

I hereby certify that on August 29, 2025, I filed the foregoing document with the clerk for the U.S. District Court, Northern District of Texas, Dallas  Division using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record, who have consented in writing to accept this Notice as service of the document by electronic means.

/s/Michael P. Heiskell
Michael P. Heiskell