IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | Case No. 3:20-cr-0621-K-1 |
| | § | |
| SHERMAN ROBERTS | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court are Defendant Sherman Roberts's Motion to Withdraw Plea of Guilty Prior to Sentencing (ECF No. 52) and Supplemental Motion to Withdraw Plea of Guilty Prior to Sentencing (ECF No. 60). In consideration of the relevant legal standards and based on the totality of the circumstances involved in this case, the Court should **DENY** Roberts's request to withdraw his guilty plea.

**Background**

On December 16, 2020, a grand jury indicted Roberts on two counts: Conspiracy to Commit Bribery Concerning Programs Receiving Federal Funds, in violation of 18 U.S.C. § 371 (Count One); and Bribery Concerning a Local Government Receiving Federal Benefits, in violation of 18 U.S.C. § 666(a)(2) (Count Two). *See* Indictment (ECF No. 1). The indictment alleged that between 2013 and 2018, Roberts, who was President and CEO of a real estate development company, bribed Dallas City Council Members in exchange for their assistance with his development projects. *See id.* ¶ 5.

Following Roberts's arraignment, the Court set the case for trial beginning on February 22, 2021. *See* Arraignment (ECF No. 9); *see also* Pretrial Order (ECF No. 11). At Roberts's request, the Court continued the initial trial setting to November 8, 2021. *See* Mot. Continue (ECF No. 15); Order Continue (ECF No. 16). Over the next three years, Roberts moved to continue his trial five more times. *See* Mots. Continue Trial (ECF Nos. 20, 23, 25, 27, 30); Orders Granting Mots. Continue Trial (ECF Nos. 21, 24, 26, 28, 32). In April 2024, Roberts also successfully negotiated a jury trial waiver from the Government, which was accepted by the District Judge. *See* Waiver (ECF No. 29); Order Accepting Waiver and Setting Bench Trial (ECF No. 31).

On September 20, 2024—about a month before the most recent trial setting—Roberts entered into a written plea agreement with the Government. *See* Plea Agmt. (ECF No. 33). In the Plea Agreement, Roberts admitted that he was guilty of Conspiracy to Commit Bribery (Count 1); that his plea was made freely and voluntarily; and that there were no guarantees or promises made as to what sentence the Court would impose. *See* Plea Agmt. ¶¶ 2, 5, 9, 12 (ECF No. 33). Roberts also agreed that he understood that the sentencing guidelines are discretionary; that pleading guilty could result in the maximum penalties listed in the Plea Agreement; and that he could not withdraw his plea if his sentence was higher than he expected. *Id.* ¶¶ 3, 5. He further agreed that the facts contained in the Factual Resume were true and would be submitted as evidence. *Id.* ¶ 2.

On September 25, 2024, Roberts signed the Factual Resume, where he again admitted his guilt and stipulated to eight pages of facts demonstrating his culpability for the offense charged by Count One. *See* Factual Resume (ECF No. 34). The stipulated facts included Roberts's admissions that he conspired with a former Dallas City Council Member to pay bribes in exchange for official actions—such as awarding low-income housing tax credits and forgivable loans—related to Roberts's real estate development projects known as the Serenity Place Apartments, Runyon Springs, and Patriot's Crossing. *See id*. ¶¶ 2, 9–14.

On November 12, 2024, Roberts pleaded guilty to Count One of the Indictment at a plea colloquy conducted by a magistrate judge. *See* Tr. Plea Hr'g, Nov. 12, 2024 (ECF No. 55). During the colloquy, Roberts admitted—under oath, on the record, and in open court—that he understood the elements of the offense to which he was pleading guilty and that he committed acts which satisfied all those elements. *See id*. at 17:5–18:25. Roberts also admitted that his plea was not the product of any promises other than those set forth in his Plea Agreement papers and that he was pleading guilty because he was guilty of the crime charged and for no other reason. *See id*. at 17:2-4, 8:11-13, 20:19-21. Roberts further admitted that he had reviewed his Plea Agreement and the consequences of pleading guilty with his attorney and that he was satisfied with the way his attorney had represented him. *See id*. at 12:22–13:19, 14:10-25.

On November 27, 2024, the District Judge accepted Roberts's guilty plea and set his sentencing for March 12, 2025. *See* Order Accepting Guilty Plea, Nov.

27, 2024 (ECF No. 41). Roberts then moved to continue his sentencing three times: first to May 21, 2025, then to July 16, 2025, and finally, to September 17, 2025. *See* Mots. Continue Sentencing (ECF Nos. 42, 44, 48); Orders Granting Mot. Continue Sentencing (ECF Nos. 43, 45, 49).

On August 28, 2025, less than a month before sentencing, Roberts terminated his attorney and retained new counsel. *See* Mot. Substitute Counsel, Aug. 28, 2025 (ECF No. 50). The next day, Roberts filed a Motion to Withdraw his Guilty Plea. *See* Mot. Withdraw Plea, Aug. 29, 2025 (ECF No. 52). Roberts then moved to continue sentencing for a fourth time (ECF No. 53) and filed a supplemental motion to withdraw his guilty plea (ECF No. 60). *See* Mot. Continue Sentencing, Sep. 9, 2025 (ECF No. 53); *see* Supp. Mot. Withdraw Plea, Sep. 29, 2025 (ECF No. 60). The District Judge referred the Motion to Withdraw to the undersigned for a hearing and recommendation. *See* Order Referring Motion (ECF No. 57).

On October 10, 2025, the undersigned held a hearing on Roberts's request to withdraw his guilty plea. *See* Minute Entry, Oct. 10, 2025 (ECF No. 65). At the hearing, both Roberts and a witness for the Government testified, and both sides admitted documentary evidence in support of their positions. *See* Tr. Mot. Withdraw Plea Hr'g, Oct. 10, 2025.

## Legal Standard

When, as here, the court has accepted a defendant's guilty plea, the defendant has only a limited right to withdraw his plea. *See* Fed. R. Crim. P.

11(d)(2); *United States v. Lord*, 915 F.3d 1009, 1014 (5th Cir. 2019). The court may, in its discretion, permit a defendant to withdraw his plea before sentencing if the defendant can show a "fair and just reason." *See* Fed. R. Crim. P. 11(d)(2); *see also United States v. Herrod*, 595 F. App'x 402, 409 (5th Cir. 2015) (not designated for publication) ("[T]he trial court's decision regarding a withdrawal motion must be accorded broad discretion."). The burden of establishing a "fair and just reason" always remains with the defendant. *Lord*, 915 F.3d at 1014.

In considering whether a defendant has shown a "fair and just reason," the court considers the *Carr* factors:

(1) whether the defendant asserted his actual innocence;

(2) whether withdrawal would prejudice the government;

(3) the extent of the delay, if any, in filing the motion to withdraw;

(4) whether withdrawal would substantially inconvenience the court;

(5) whether the defendant had the benefit of close assistance of counsel;

(6) whether the guilty plea was knowing and voluntary; and

(7) the extent to which withdrawal would waste judicial resources.

*See United States v. Carr*, 740 F.2d at 343–44 (5th Cir. 1984). Under *Carr*, "no single factor or combination of factors mandates a particular result," and "the district court should make its determination based on the totality of the circumstances." *United States v. Still*, 102 F.3d 118, 124 (5th Cir. 1996). The district

court is not required to make explicit findings as to each of the *Carr* factors. *United States v. Powell*, 354 F.3d 362, 370 (5th Cir. 2003).

## Analysis

### A. *Carr* Factor One: Assertion of Actual Innocence

Under the first *Carr* factor, the Court must consider whether the defendant has asserted his actual innocence. *Carr*, 740 F.2d at 343–44. But a claim of innocence alone is not enough to carry the defendant's burden; rather, the defendant must also provide a "substantial supporting record for [his] assertion in order to support the motion to withdraw." *United States v. Strother*, 977 F.3d 438, 444 (5th Cir. 2020) (cleaned up) (citing *Carr*, 740 F.2d at 344); *see also United States v. Rojas*, 898 F.2d 40, 43 (5th Cir. 1990).

Here, Roberts submits his own declaration, wherein he states that he told his prior attorneys, Mr. Greene and Mr. Cox, that he was innocent of the crimes charged. *See* Mot. Withdraw Plea at Ex. A, Decl. Sherman Roberts at 1 (ECF No. 52-2). Roberts further states that he only entered into the Plea Agreement because Mr. Cox promised he would receive a sentence of probation, and that due to his age, poor health, and his wife's poor health, he felt pressured to plead guilty. *See id.* at 2. Roberts also testified at the hearing on the Motion to Withdraw and reiterated that he was innocent and only pleaded guilty because he felt pressured and believed that pleading guilty would result in a sentence of probation rather than jail time. *See* Tr. Mot. Withdraw Plea Hr'g, Oct. 10, 2025, at 7:7-19, 35:7–36:3, 36:25–37:6.

6

But as Roberts acknowledges in his Motion, his recent assertion of innocence is directly contradicted by his written Plea Agreement and his previous statements made in open court, while under oath, during his plea colloquy. *See* Rec. Guilty Plea (ECF No. 40); *see also* Tr. Plea Hearing, Nov. 12, 2024 (ECF No. 55). In his Plea Agreement, Roberts admitted that he was guilty of Conspiracy to Commit Bribery (Count I), that his plea was made freely and voluntarily, and that there have been no guarantees or promises as to what sentence the Court will impose. *See* Plea Agmt. ¶¶ 2, 5, 9, 12 (ECF No. 33). He further acknowledged that sentencing guidelines are discretionary, that pleading guilty could result in the maximum penalties listed in the Plea Agreement, and that he could not withdraw his plea if his sentence was higher than he expected. *Id.* ¶¶ 3, 5. And he agreed that he has "thoroughly reviewed all legal and factual aspects of this case" with his attorney and was "fully satisfied with that attorney's legal representation." *Id.* ¶ 11. Finally, Roberts admitted that the facts contained in the Factual Resume are true. *Id.* ¶ 2. And in his Factual Resume, Roberts admitted "that he committed all the essential elements of the offense [charged in Count One]." *See* Factual Resume ¶ 27 (ECF No. 34).

At his plea hearing in November 2024, the magistrate judge reviewed the Factual Resume with Roberts, and he admitted that the facts set forth in the Factual Resume were true and correct. *See* Tr. Plea Hearing, Nov. 12, 2024, at 17:5-8 (ECF No. 55). He admitted that he understood the elements of the offense to which he was pleading guilty and that he committed acts which satisfied all those

elements. *See id.* at 17:5–18:25. Roberts also admitted that his plea was not the product of any promises other than those set forth in his Plea Agreement paperwork and that he was pleading guilty because he was actually guilty of the crime charged and for no other reason. *See id.* 17:2-4, 8:11-13, 20:19-21. Roberts further admitted that he had reviewed his Plea Agreement and the consequences of pleading guilty with his attorney and that he was satisfied with the way Mr. Cox had represented him. *See id.* at 12:22–13:19, 14:10-25.

Roberts concedes that his open-court declarations during the plea colloquy carry a "strong presumption of veracity." *See* Mot. Withdraw Plea at 5 (ECF No. 52) (quoting *United States v. Darling*, 766 F.2d 1095 (7th Cir. 1985)); *see also U.S. v. Lampazianie*, 251 F.3d 519, 524 (5th Cir. 2001) ("[I]t is well established that '[s]olemn declarations in open court carry a strong presumption of veracity.'") (quoting *Blackledge v. Allison,* 431 U.S. 63, 74 (1977)).  To address these contradictions, Roberts testified at the hearing on the Motion to Withdraw. On the stand, Roberts stated that he intentionally and knowingly perjured himself during the plea colloquy because he felt pressured into pleading guilty by his attorney; because of his ongoing health issues, as well as health concerns for his wife and his mother-in-law; and because he believed that pleading guilty would result in probation rather than jail time. *See* Tr. Mot. Withdraw Plea Hr'g, Oct. 10, 2025, at 7:10–8:6, 34:18–37:6. He also stated that he only signed the Plea Agreement because he didn't feel that his attorney had sufficient time to "give a good defense" considering the impending trial setting. *See id.* at 30:9-17. But Roberts's

8

statements during the colloquy are entitled to greater weight than his "after-the-fact, self-serving revisions." *See United States v. Cothran*, 302 F.3d 279, 284 (5th Cir. 2002) (when a defendant argued that his plea was not voluntary, the Fifth Circuit compared the defendant's current position with his prior statements at the plea colloquy, and, in denying relief, stated "we give the statements during the colloquy greater weight than we give unsupported, after-the-fact, self-serving revisions."). And Roberts's confessed perjury—rather than helping his case—weighs against permitting withdrawal. *See, e.g.*, *United States v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005) ("Judges need not let litigants contradict themselves so readily; a motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand unless the defendant has a compelling explanation for the contradiction."); *United States v. Shah*, 453 F.3d 520, 523 (D.C. Cir. 2006) (noting that "lying to a court is not a 'fair and just reason,' . . . for allowing a plea to be withdrawn"); *United States v. Soto*, 660 F.3d 1264, 1266 (10th Cir. 2011) ("Must a district court allow a defendant to withdraw his guilty plea—even when the request is based on a lie? Unsurprisingly, we hold the answer is no. The law does not permit anyone to compel judicial action based on intentionally false statements.").

Roberts also submitted a declaration of Neal Walker and two declarations from Charles Gulley (First and Supplemental) in support of his Motions to Withdraw his plea. *See* Mot. Withdraw Plea at Exs. B, C, Gulley Decl., Walker Decl., (ECF Nos. 52-3, 52-4); Supp. Mot. Withdraw Plea at Ex. A, Supp. Gulley Decl. (ECF

No. 60-1). But neither Walker's declaration nor Gulley's first declaration provide any support for Roberts's belated claim of innocence. Indeed, as Roberts acknowledged in his Motion, both declarations seek only to rebut the Government's assertion that Roberts received a benefit of more than $3,700,000. *See* Mot. Withdraw Plea at 8 (ECF No. 52).

To be sure, Roberts later submitted a supplemental declaration from Charles Gulley in part to support his "assertions of innocence." *See* Supp. Mot. Withdraw Plea at 1 (ECF No. 60); *see also* Gulley Supp. Decl. (ECF 60-1). But Mr. Gulley's supplemental declaration merely stated, in general terms, that it "*would have been* unnecessary and impractical" for Roberts to commit bribery and that Roberts "*did not have to* bribe anyone to participate in Runyon Springs." *See* Gulley Supp. Decl. at 1-3 (ECF No. 60-1) (emphasis added). A third-party's statements about whether bribery "would have been" impractical or whether Roberts "had to" pay those bribes to obtain favorable official action does not unequivocally refute Roberts own prior admissions that he did, in fact, pay bribes. *See id.* What's more, the supplemental declaration refers only to the "Runyon Springs" development—it says nothing about whether Roberts did or did not bribe anyone related to his Serenity Place Apartments or Patriot's Crossing projects. *See id.*

In view of the whole record, Roberts's recent assertion of innocence is not supported by sufficient evidence to overcome his unequivocal prior

acknowledgements of guilt. *See Strother*, 977 F.3d at 444. The first factor weighs against allowing Roberts to withdraw his guilty plea.[1]

### B. *Carr* Factor Two: Prejudice to the Government

The second *Carr* factor asks whether withdrawing the guilty plea will prejudice the Government. *See Carr*, 740 F.2d at 343–44. The Government argues that it will be prejudiced because it will have to invest resources in preparing for a trial during a time when the U.S. Attorney's Office is particularly understaffed and the prosecutors who negotiated the plea agreement and who were assigned to litigate the case are no longer employed by the office. *See* Resp. Mot. Withdraw Plea at 6 (ECF No. 56). Additionally, the Government asserts that the passage of time could impair the witnesses' memories. *See id.* Roberts responds that key witnesses and evidence are still available, although he concedes that trial preparation would be an inconvenience. *See* Mot. Withdraw Plea at 5 (ECF No. 52).

Here, the Government will clearly suffer prejudice if Roberts is permitted to withdraw his plea. As was acknowledged at the hearing, this case has been pending on the Court's docket since 2020 and involves charged conduct occurring over a decade ago. *See* Indictment, Dec. 16, 2020 (ECF No. 1). The risk of faded memories and unavailable witnesses is significant. This second factor weighs against allowing Roberts to withdraw his guilty plea.

---

[1] Even if the Court were to accept Roberts's assertion of innocence, the remaining *Carr* factors all weigh against allowing withdrawal. An assertion of innocence alone is insufficient to justify withdrawal. *See Carr*, 740 F. 2d at 344.

### C. *Carr* Factor Three: Extent of Delay

"The longer a defendant delays in filing a withdrawal motion, the more substantial reasons he must proffer in support of his motion." *Lord*, 915 F.3d at 1015 (quoting *Carr*, 740 F.2d at 344) (cleaned up); *see also Lampazianie*, 251 F.3d at 524–25 ("[T]he district court was entitled both to discount [defendant]'s belated assertions of innocence and to weigh the seven-month delay in denying [defendant]'s motion."). The record here demonstrates that the District Judge accepted Roberts's guilty plea on November 27, 2024.[2] But Roberts waited until August 29, 2025—*more than nine months*—to move to withdraw his plea.

Roberts acknowledges that his argument regarding this factor is "the weakest." *See* Mot. Withdraw Plea at 6 (ECF No. 52). Certainly, much shorter delays have been determined to weigh against withdrawal. *See, e.g.*, *United States v. Thomas*, 13 F.3d 151, 153 (5th Cir. 1994) (describing a six-week delay as "significant"); *United States v. Rinard*, 956 F.2d 85, 88–89 (5th Cir. 1992) (holding that a 69-day delay weighed against defendant); *United States v. Hurtado*, 846 F.2d 995, 997 (5th Cir. 1988) (holding that a seven-week delay weighed against withdrawal); *Carr*, 740 F.2d at 345 (finding that the motion "was not promptly filed" 22 days after the plea). Thus, the third factor weighs against allowing Roberts to withdraw his guilty plea.

---

[2] Roberts's Plea Agreement was signed earlier, on September 20, 2024. *See* ECF No. 33. He appeared before the magistrate judge for his plea hearing on November 12, 2024, and the magistrate judge filed her Report and Recommendation that same day. *See* ECF Nos. 38, 39.

### D. *Carr* Factors Four and Seven: Inconvenience to the Court and Waste of Judicial Resources

The fourth *Carr* factor asks whether permitting withdrawal will inconvenience the court. *See Carr*, 740 F.2d at 344. And the seventh factor asks whether withdrawal will waste judicial resources. *Id.* Here, the record indicates a trial in this case could take several weeks. And a lengthy bench trial would certainly inconvenience the Court and require significant attention and resources. *See id.* at 345 (finding a two-to-three-week trial would inconvenience the district court); *see also U.S. v. McKnight*, 570 F.3d 641, 650 (5th Cir. 2009) (finding that a "two-day" trial, although short, did not necessitate a finding that there is no inconvenience to the district court).

Additionally, this case has been on the Court's docket for almost five years. The Court considered and accepted Roberts's guilty plea almost one year ago, and it has invested resources in preparing the presentence report. Allowing Roberts to withdraw his plea now would require shuffling an already packed docket to accommodate this trial. Such an inconvenience to the Court and expenditure of judicial resources weigh against allowing Roberts to withdraw his plea. *See Carr*, 740 F.2d at 345 (recognizing that the district court is in the best position to know the effect that withdrawal has on its resources).

### E. *Carr* Factor Five: Close Assistance of Counsel

Whether a defendant received close assistance of counsel is a "fact-intensive inquiry." *Lord*, 915 F.3d at 1016. In weighing this factor, courts look to whether

13

counsel was available to the defendant throughout the proceedings, including whether counsel negotiated the defendant's plea agreement, whether counsel filed motions on behalf of the defendant, discussed the case with the defendant, explained the defendant's rights and the weight of the evidence, and whether a defendant was satisfied with his defense counsel. *Id.* Importantly, whether a defendant received "close assistance of counsel" is distinct from whether the defendant received "ineffective assistance of counsel." *See Strother*, 977 F.3d 438.

In Roberts's declaration, Roberts states that Mr. Cox failed to review discovery with him, did not fully explain the factual basis of his guilty plea or its sentencing implications, failed to interview witnesses with potentially exculpatory evidence despite Roberts's insistence that he do so, and failed to obtain Mr. Greene's files and notes. *See* Mot. Withdraw Plea, Ex. A Roberts Decl. (ECF No. 52-2). While this conduct—if true—could fall short of professional standards, it does not mean that Roberts was deprived of his counsel's "close assistance" such that he should be permitted to withdraw his plea. *See United States v. Armendariz*, 80 F.4th 546, 554 (5th Cir. 2023) ("Counsel's assistance may be <u>close</u> without being effective.") (emphasis added) (quoting *United States v. Urias-Marrufo*, 744 F.3d 361, 366 (5th Cir. 2014)). Additionally, these assertions are contradicted by the record.

Here, the record indicates that Mr. Cox was available to Roberts throughout the proceedings. Roberts was free on pretrial release and met with Mr. Cox on several occasions to discuss the case. *See* Tr. Mot. Withdraw Plea Hr'g, Oct. 10,

2025, at 10:9–11:1; *see also* Mot. Withdraw Plea, Roberts Decl. at Ex. A, Timeline (ECF No. 52-2). Mr. Cox filed multiple motions on Roberts's behalf, including multiple motions to continue the trial setting. And Mr. Cox managed to secure a bench trial for Roberts, something Roberts admitted he wanted because of his concerns regarding a jury given the nature of the case. *See* Tr. Mot. Withdraw Plea Hr'g, Oct. 10, 2025, at 13:8–14:11. Mr. Cox also negotiated Roberts's Plea Agreement with the Government. *See McKnight*, 570 F.3d at 646–47 (finding that the mere fact that a plea agreement was negotiated at all "weighs in favor of finding close assistance of counsel").

As noted above, Roberts confirmed in his Plea Agreement that he was "fully satisfied with [Mr. Cox's] legal representation" and that he received satisfactory explanations "concerning each paragraph in [the] plea agreement, and the alternatives available" to him. *See* Plea Agmt. ¶ 11 (ECF No. 33); *see also Herrod*, 595 F. App'x 402 (finding that defendant received close assistance of counsel in part because defendant confirmed in his plea agreement that he was "fully satisfied with defense counsel's legal representation," and that he "received satisfactory explanations from defense counsel concerning each paragraph of [the] plea agreement, each of [his] rights affected thereby, and the alternatives to entering a guilty plea").

Roberts's statements in open court further rebut his new assertions regarding Mr. Cox's representation:

**THE COURT**: You have Mr. Cox representing you as your attorney. Have you had enough time to talk to him about your case?

**ROBERTS**: Yes, ma'am.

**THE COURT**: Have you understood the advice that he's given you?

**ROBERTS**: Yes, ma'am.

**THE COURT**: And are you satisfied with the way he's represented you?

**ROBERTS**: Yes, ma'am.

Tr. Plea Hr'g at 12:22–13:6; *see also id.* at 11:22-24 (Roberts admitting that he has not had any problems communicating with his attorney). These in-court admissions are entitled to a strong presumption of veracity. *See United States v. Rodriguez*, 306 F. App'x 135, 138 (5th Cir.2009) (per curiam) (finding no abuse of discretion in denial of motion to withdraw, noting that the defendant "indicated that he was satisfied with the representation of counsel during his plea colloquy."); *United States v. Morris*, 85 F. App'x 373, 374 (5th Cir.2003) (per curiam) ("There is no support in the record for [the defendant's] assertion that he did not have close assistance of counsel. [The defendant] stated at the guilty plea hearing that he was satisfied with his counsel's representation and that his counsel had discussed his entire case with him.").

In his Motion, Roberts also expresses dissatisfaction with Mr. Cox's allegedly incorrect assurances regarding his likely sentence if he were to plead guilty. *See* Mot. Withdraw Plea at 4, 7 (ECF No. 52); Tr. Mot. Withdraw Plea Hr'g,

16

Oct. 10, 2025, at 61:22–62:18. Again, this late dissatisfaction is contrary to his sworn testimony at the plea hearing. *See* Tr. Plea Hr'g at 12:22–13:6. And even if Mr. Cox misadvised Roberts as to his likely sentence, that does not preclude a finding of close assistance. *See, e.g.*, *Herrod*, 595 F. App'x. at 412; *see also United States v. Mendez*, 447 F. App'x. 577, 579 (5th Cir.2011) (per curiam); *Rodriguez*, 306 F. App'x. at 138.

The Court finds that Roberts received close assistance of counsel. Accordingly, this factor also weighs against allowing Roberts to withdraw his guilty plea.

### F. *Carr* Factor Six: Knowing and Voluntary

The remaining factor asks whether the defendant's plea was knowing and voluntary. *See Carr*, 740 F.2d at 344. Whether a plea is knowing depends on whether the defendant understood the consequences of his plea; whether the plea is voluntary depends on whether the plea was induced by threats or improper promises. *Herrod*, 595 F. App'x. at 412.

As Roberts acknowledges, the record—including Roberts's statements during the plea colloquy that he understood the crimes for which he was charged, the facts to which he admitted supported his plea, the rights he was waiving, and the punishment he faces—creates a presumption of validity. *See* Mot. Withdraw at 9 (ECF No. 52). Nevertheless, Roberts argues that because he was deprived of adequate assistance of counsel, he was unable to make "an informed and conscious

choice to plead guilty." *See id.* (quoting *United States v. Cavitt*, 550 F.3d 430, 431 (5th Cir. 2008).

But this ignores the fact that Mr. Cox worked for years to negotiate a plea agreement on Roberts's behalf, and the Government participated in multiple reverse proffers with Roberts prior to him entering his plea. *See* Tr. Mot. Withdraw Plea Hr'g, Oct. 10, 2025, at 58:21–60:7. The record also establishes that Roberts is an experienced real estate developer with a college degree. *See* Tr. Plea Hr'g at 11:10-21 (ECF No. 55); *see also* Factual Resume (ECF No. 34); Indictment ¶ 1 (ECF No. 1); Tr. Mot. Withdraw Plea Hr'g, Oct. 10, 2025, at 75:15–76:2. And at all points in the proceedings, he was represented by a privately retained attorney (of his choosing) as well as his "civil counsel." *See* Tr. Mot. Withdraw Plea Hr'g, Oct. 10, 2025, at 14:17–15:11 (testifying that Mr. Wiley, Robert's civil counsel, was present for all meetings with Mr. Cox). This is further evidence that Roberts was able to understand the elements and nature of the offense to which he pleaded guilty. Indeed, one of his grievances against Mr. Cox was Mr. Cox allegedly failed to "understand" the intricacies of public/private real estate investment as well as Roberts did. *See id.* at 15:1–16:2; *see also* Mot. Withdraw Plea, Ex. A Roberts Decl. (ECF No. 52-2).

Additionally, as discussed above, Mr. Cox filed three motions to continue sentencing after the District Judge accepted Roberts's guilty plea.[3] *See* Mots.

---

[3] First, Roberts sought more time so that he could gather information for his probation officer. *See* Mot. Continue Sentencing, Jan.7, 2025 (ECF No. 42). Then

Continue Sentencing (ECF Nos. 42, 44, 48). Roberts never asserted his innocence or challenged his accepted guilty plea in any of those motions. *See id*. This indicates to the Court that Roberts's decision to withdraw his plea may be tactical, rather than unknowing. *See Carr*, 740 F.2d at 345. The rationale for allowing the withdrawal of a guilty plea is to permit a defendant to undo a plea that was unknowingly made at the time it was entered; the purpose is not to allow a defendant to make a tactical decision to enter a plea, wait, and then obtain a withdrawal if he believes he made a bad choice in pleading guilty. *Id*.

Here, Roberts admitted that he made the decision to plead guilty in part because pleading guilty might result in a sentence of probation rather than prison time and because he "was trying to see what was the best way to come out." *See* Tr. Mot. Withdraw Plea Hr'g, Oct. 10, 2025, at 7:7-19, 47:11–48:21, 50:4-10. This is precisely the type of "tactical decision" that the Fifth Circuit cautioned against in *Carr*. *See Carr*, 740 F.2d at 345. Significantly, Roberts did not move to withdraw his plea until after the presentence report was released, and even then, his concerns with the report focused on its failure to include "anything about [his] cooperation" and because the "guidelines were pretty high where [he] could spend up to 135 months in prison." *See* Tr. Mot. Withdraw Plea Hr'g, Oct. 10, 2025, at

---

he was working on "matters that should impact sentencing" and still needed more time to gather information for his probation officer. *See* Mot. Continue Sentencing, Apr. 1, 2025 (ECF No. 44). And finally, Roberts needed more time to review the presentence report and get information to Mr. Cox regarding his objections. Mot. Continue Sentencing, June 27, 2025 (ECF No. 48).

38:2–40:7; *see also id.* at 62:6-10. And even after filing the Motion to Withdraw, Roberts contacted the Government to see if they would compromise regarding the sentencing recommendation in the presentence report and indicated that he was still open to probation. *See id.* at 62:19–64:10; *see also id.* at Gov't's Ex. 1 (ECF No. 66-1) (email from Robert's counsel to AUSA).

Finally, it is notable that Roberts filed his Motion only two months after an alleged co-conspirator, Ruel Hamilton, was acquitted for the same charged conduct that Roberts pleaded guilty to. *See* Tr. Mot. Withdraw Plea Hr'g, Oct. 10, 2025, at 61:10–62:6, 88:12-16. The timing, when analyzed in the context of Hamilton's case, is further evidence that Roberts's decision to seek withdrawal of his plea is tactical.

Thus, the Court finds that Roberts's plea was knowing and voluntary, and the sixth factor weighs against allowing withdrawal.

### Recommendation

The Court should find Roberts has failed to show a "fair and just reason" for withdrawing his plea and **DENY** his Motion to Withdraw Plea of Guilty Prior to Sentencing (ECF No. 52) and Supplemental Motion to Withdraw Plea of Guilty Prior to Sentencing (ECF No. 60).

**SO RECOMMENDED**.

November 3, 2025

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## <u>INSTRUCTIONS FOR SERVICE AND</u><br><u>NOTICE OF RIGHT TO APPEAL/OBJECT</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district judge, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).